Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6728 | **DATE** | December 12, 2002 |
| **CASE TITLE** | Brown v. Chicago Sun Times, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #15-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (doc. #15-1) is **GRANTED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 17 2002 date docketed | |
| | Notified counsel by telephone. | | | 25 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

| | |
|---|---|
| MARY E. BROWN, | ) |
| Plaintiff, | ) |
| | ) NO. 00 C 6728 |
| v. | ) |
| | ) JUDGE WILLIAM J. HIBBLER |
| CHICAGO SUN-TIMES, INC. | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary E. Brown ("Brown") filed suit against her former employer, Defendant Chicago Sun-Times ("Sun-Times"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and retaliation for exercising her rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* Sun-Times now moves for summary judgment on all of Brown's claims, contending she cannot establish a prima facie case of race discrimination or retaliation, or demonstrate pretext. For the following reasons, the Court grants summary judgment in favor of Sun-Times.

## BACKGROUND

In January 1998, Sun-Times hired Brown, an African-American, as a collector in the Advertising Accounting Department ("Department"). Brown, and three other collectors, (also all African-American), were responsible for calling advertising customers who were more than sixty days late paying their bills and attempting to collect the outstanding balance. Brown worked from 8:45 a.m. to 5 p.m., with a one-hour lunch break.

Several months into the position, Brown began experiencing some difficulties. On July 13, 1998, Barbara Rowsey ("Rowsey"), the supervisor of Credit and Collections, an African-



American, spent time with Brown monitoring her phone calls and offering suggestions for improvement. Rowsey documented performance problems she observed during this session, noting that Brown failed to return customer calls or review customers' files before placing calls to them. As a result of several complaints received from customers and sales personnel, Brown was issued a verbal warning on or about July 21, 1998. During the meeting to discuss the warning, Rowsey offered to provide additional training, but Brown declined. Additionally, Brown refused to sign the warning because she disagreed with its issuance.

However, Brown's performance apparently improved, since, in January 1999, Greg Llorens ("Llorens"), the credit manager in the Department and one of Brown's supervisors, a Caucasian/Asian, recommended she receive a 2% salary increase out of a maximum possible increase of 3%. In her written job appraisal, Llorens noted Brown "regularly works past the normal work day and continues to improve her capabilities as a Sun-Times Collector." Brown Dep., Ex. 3.

That improvement did not last for long, though. Beginning in August 1999, Llorens informed collectors that they must attend a monthly meeting with the sales department staff. Specifically, Llorens directed collectors to review and be prepared to discuss each of their accounts that totaled more than $40,000 in arrears. However, when Brown appeared at the meeting in September 1999, she was unable to answer questions as to the status of her accounts with large balances. Llorens had also instructed collectors to use the time between 8:45 a.m. and 10:45 a.m. to focus on accounts under $10K.

Brown, who was suffering from a condition that resulted in the swelling of her face and rendered her unable to talk, took approved FMLA leave from September 29, 1999 until October

12, 1999. On October 14, 1999, the day after Brown returned to work, Llorens issued a "Performance Written Warning" to Brown. The warning detailed a number of problems with Brown's job performance, including complaints from customers and Sun-Times sales representatives of a negative attitude and lack of knowledge about the accounts for which she was responsible. Additionally, Llorens pointed out the fact that Brown had shown up unprepared for the September 1999 monthly meeting. Although the majority of the warning focused on the deficiencies in Brown's performance, Llorens also noted the number of days of work Brown had missed within the past 30 days and concluded that was "excessive." Brown Dep., Ex. 5.

In response to the warning, Brown met with Ted Rilea ("Rilea"), Sun-Times' vice president of Human Resources, to voice her objections to the warning. At no time did Brown claim discriminatory conduct due to her race of use of FMLA leave. Brown subsequently met with Llorens and Rowsey to discuss their concerns about her work performance. *See* Brown Dep., Ex. 8 (summarizing the October 28, 1999 meeting).

One of the issues Brown had raised at the meeting involved the lack of written collection procedures for the Department. *See id.* Consequently, in March 2000, Llorens gave all collectors, including Brown, a written memorandum, detailing the monthly requirements for collectors, including a minimum daily call requirement. Even with that guidance, though, Brown continued to struggle with her job duties. Not surprisingly, then, on May 24, 2000, Llorens and Rowsey met with Brown again to discuss the latest complaints received from customers and Sun-Times employees about her performance, and shortly thereafter, issued a second disciplinary warning. In the warning, Llorens noted Brown's failure to meet the call requirement instituted

in April 2000, and also mentioned her "repeated tardiness." Brown Dep., Ex. 11. Brown was advised that "any further complaints regarding your performance, failure to meet the minimum call volume, and/or additional instances of tardiness, may, and likely will, result in immediate termination of your employment with the Chicago Sun-Times." *Id.*

The next day, Brown filed a charge with the EEOC, claiming she had been "subject to harassment and unwarranted discipline" because of race and retaliation in violation of Title VII. Less than a week later, Brown took another FMLA approved medical leave, from May 31-July 6, 2000, due to gynecological problems. The EEOC dismissed Brown's charge on July 28, 2000, concluding that its investigation had not uncovered evidence of Title VII violations.

Effective September 5, 2000, Llorens increased the minimum daily call requirement for all collectors from 25 to 35. On October 20, 2000, Llorens issued Brown yet another disciplinary warning, citing once more her failure to meet the minimum call requirement and repeated tardiness. Llorens stated that while Brown might arrive at work around 8:45a.m., her designated start time, she would not actually begin working until much later. Instead, she would put on makeup, eat breakfast or read the newspaper. *See* Llorens Dep., Ex. 12. Furthermore, Llorens complained, Brown had appeared at the monthly department meeting over an hour late and then refused to discuss her accounts. Llorens warned Brown, as he had previously done, that "further job performance issues, . . . failure to at least meet and 'minimum' call volume and/or future instances of tardiness will result in your immediate termination...." Brown Dep., Ex. 22.

In a memo dated November 30, 2000, Llorens documented that Brown was at least 30

minutes late to work on November 26, 27, and 28, 2000,¹ and did not offer an acceptable explanation for her tardiness. Llorens did not note this fact on any of Brown's time sheets, though. Llorens sought approval to terminate Brown for tardiness from several individuals at Sun-Times, including Rilea, and they all concurred with his decision. Brown was notified on December 5, 2000, that her employment had been terminated for excessive tardiness. Brown was replaced by an African-American.

Brown filed this lawsuit against Sun-Times, alleging she was disciplined and discharged because of her race, terminated for filing an EEOC charge, and retaliated against for taking FMLA leave. Sun-Times maintains there is no genuine issue of material fact as to any of her claims that would warrant a trial. Brown, on the other hand, contends several key facts are in dispute, namely the allegations of deficient job performance and tardiness, and that there is direct evidence to show Llorens wrongfully disciplined her for missing work due to illness.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, the Court views all facts and inferences are viewed in the light most favorable to the non-moving party. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As such, a dispute about a material fact is "genuine" if the evidence is

---

¹The documentation attached to the memo indicates the dates were actually November 27, 28, and 29.

such that a reasonable jury could render a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff cannot simply rest on mere allegations of a claim without any significant probative evidence that supports his or her complaint. *Id.* Indeed, the use of self-serving assertions, without factual support in the record, will not defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998). Rather, a party opposing summary judgment must present specific facts demonstrating a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). Where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Id.* at 322-23.

## ANALYSIS

### I. Race Discrimination in Violation of Title VII (Counts I and II)

Brown claims Sun-Times disciplined her and discharged her on account of her race. To prevail on a Title VII discrimination claim, Brown must prove she was a victim of intentional discrimination under either the direct method, or the indirect, burden-shifting method articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Flores v. Preferred Technical Group*, 182 F.3d 512, 514 (7th Cir. 1999). Because Brown does not point to any direct proof that her race was a factor in the decisions to discipline and terminate her employment, the Court must analyze her claims using the familiar *McDonnell Douglas* test.

*A. Prima Facie Case*

To state a prima facie case of race discrimination, Brown must show: (1) membership in

a protected group; (2) satisfactory job performance; (3) an adverse employment action; and (4) Sun-Times treated similarly-situated employees outside her classification more favorably. *See Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). If Brown meets her threshold burden of establishing a prima facie case, the burden of production then shifts to Sun-Times to articulate a legitimate, non-discriminatory reason for its employment decisions. *Id.* at 746-47. If Sun-Times satisfies that requirement, Brown must point to evidence showing Sun-Times's proffered reasons were "merely pretextual." *Id.*

Sun-Times argues that Brown cannot even demonstrate a prima facie case of race discrimination and thus her claim fails. The Court agrees. Brown, as an African-American, clearly satisfies the first element. And as for the third element, Brown's discharge certainly qualifies as an adverse employment action. *See Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999). It is highly questionable, though, whether the disciplinary warnings, which were not accompanied by a decrease in wages, material loss of benefits, or significantly diminished responsibilities, constitute an adverse action. *See e.g., Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (letter of reprimand not actionable); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (explaining that tangible job consequences must accompany the reprimand); *Smart v. Ball State Univ.*, 89 F.3d 437, 447 (7th Cir. 1992)("This circuit already has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action...."). Regardless, Brown's race discrimination claim nonetheless fails because she cannot satisfy either the second or fourth prongs of the test.

Concerning Brown's work performance, Sun-Times has presented unrebutted evidence establishing that during her nearly three years of employment, Brown received four disciplinary

warnings, the first three of which stemmed from customer and internal sales representative complaints of a negative attitude, failure to return phone calls, and lack of knowledge about her accounts. Additionally, the warnings detailed instances where Brown appeared at meetings unprepared, and noted Brown's failure to meet the minimum daily call requirement, as well as repeated tardiness. Brown argues that a triable issue of fact exists because, she contends, all of the complaints about her work performance are unfounded. However, Brown offers no evidence whatsoever to substantiate her contention that she was meeting Sun-Times' legitimate expectations, other than her own personal belief. Brown's self-serving statements are insufficient to create a genuine issue of material fact. *See Mills v. First Fed. Sav. & Loan Ass'n. of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996)(citing *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994)("An employee's self-serving statements about his ability are insufficient to contradict an employer's negative assessment of that ability."). Brown does point to the positive job appraisal she received from Llorens in January 1999. However she ignores the fact that between January 1999 and December 2000, her termination, she received three written warnings of deficient performance. Her prior satisfactory performance thus has no bearing on whether she was performing according to Sun-Times' expectations at the time her employment ended almost two years later. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991). Brown has therefore failed to establish element two of the prima facie case.

Moreover, Brown makes no attempt to identify a single employee outside of her protected class who was treated more favorably by Sun-Times. In fact, Brown was replaced by an African-American. As such, she has also failed to establish element four of the prima facie case. Consequently, her race discrimination claim cannot proceed.

### B. Legitimate, Non-Discriminatory Reason for Action by Employer

Even if Brown had been able to establish a prima facie case of discrimination, Sun-Times has articulated a legitimate, non-discriminatory reason for disciplining and terminating Brown. As previously noted, the record reflects that Sun-Times repeatedly warned Brown about her deficient performance, and made her aware of the possible consequences if she did not improve. Brown has not shown those reasons were merely pretextual to hide Sun-Times' racial animus towards her. *See Mills*, 83 F.3d at 845 (employee must "*specifically* refute the facts which allegedly support the employer's proffered reasons" in order to demonstrate pretext). In determining "whether an employer's justification for dismissing its employee is pretextual, the inquiry is not whether the reason for the firing was a correct business judgment but whether the decision-makers honestly acted on that reason." *Bahl v. Royal Idem. Co.*, 115 F.3d 1283, 1291 (7th Cir. 1997). Brown has presented no evidence to show Sun-Times did not honestly believe her performance was deficient. Sun-Times, on the other hand, has sufficiently demonstrated that it terminated Brown for legitimate reasons.

Therefore, summary judgment is granted in favor of Sun-Times on Brown's race discrimination claims.

### II. Retaliation in Violation of Title VII and FMLA (Counts III and IV)

In its recent decision of *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640 (7th Cir. 2002), the Seventh Circuit clarified the proper standard for analyzing retaliation claims at the summary judgment stage. *Stone* set forth two routes to summary judgment on retaliation claims. *Id.* at 644. First, a plaintiff may present direct evidence that she engaged in protected activity and as a result suffered an adverse employment action. *Id.* If the evidence is uncontradicted,

the plaintiff is entitled to summary judgment; however, if the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff regardless of any retaliatory motive, the defendant is entitled to summary judgment. *Id.*

Under the second indirect method, an adaptation of the *McDonnell Douglas* test to the retaliation context, a plaintiff must show (1) that she engaged in a statutorily protected activity, (2) she was subjected to an adverse employment action, (3) she was performing her job in a satisfactory manner, and (4) she was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *Id.* If the plaintiff establishes a prima facie case of retaliation in this manner, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise, there must be a trial." *Id.* Under the second method, establishing a causal link between the protected expression and adverse employment action is not required. *Id.*

### A. Title VII

Brown claims Sun-Times fired her in December 2000, because she had filed a charge with the EEOC alleging race discrimination and retaliation in May 2000. Brown does not rely on direct evidence to support her retaliation claim, as "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Consequently, she must proceed under the indirect method articulated in *Stone*.

Brown undoubtedly engaged in protected activity when she filed a charge with the

-10-

EEOC, and her termination, as the Court has already noted, constitutes an adverse employment action. Yet once again, Brown stumbles on the elements of satisfactory job performance and identifying similarly situated employees who Sun-Times treated more favorably. As with Brown's race discrimination claim, *see discussion supra*, those defects are fatal to her Title VII retaliation claim. Sun-Times is therefore entitled to summary judgment on that claim.

## B. FMLA

The Seventh Circuit has held that a claim of retaliation in violation of FMLA should be treated like other retaliatory discharge claims. *See King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). As such, the standards set forth above in *Stone* apply.

Brown points to the three written disciplinary warnings noting "attendance" issues, and her FMLA-protected leaves of absence in September 1999 and May 2000, as direct evidence that Sun-Times' termination decision was at least partially motivated by her use of medical leave. Specifically, Brown maintains that because the October 14, 1999 disciplinary warning criticized her for having missed 11.5 days within the past 30 days, while she was on leave, and she received the warning the day after she returned to work, the discipline stemmed not from performance issues, but from her having taken FMLA leave. Furthermore, Brown contends, although the October 20, 2000, disciplinary warning identifies tardiness as the "attendance" problem, what Sun-Times actually disciplined her for was being absent from May 31-July 6, 2000, on medical leave.

*Stone* makes it clear that direct evidence of retaliation means "evidence that establishes without resort to inferences from circumstantial evidence" that plaintiff engaged in protected activity and as a result suffered an adverse employment action. 281 F.3d at 644. Certainly the

October 14, 1999, warning, standing alone, is problematic, because it does refer to Brown's absence from work on FMLA leave. However, the gist of the warning addresses her performance issues, with only one short paragraph devoted to the excessiveness of her absences. More importantly, though, Brown must tie the protected activity to an adverse employment action, which disciplinary warnings, as the Court has already stated, are not.

Focusing on the December 2000 termination decision, which does constitute an adverse action, does not help Brown here either. First, neither of the disciplinary warnings issued in May and October 2000 refers to Brown's *absences* from work. Instead, they mention attendance generally, and note in particular, tardiness. In fact, Llorens specifically complained that Brown was showing up for work after 8:45 a.m., the set start time for collectors, and even when she appeared on time, not starting to do work until much later. The direct connection Brown tries to make between her taking medical leave, being warned about "attendance" issues, and being terminated months later, simply is not there. Contrary to Brown's belief, she has pointed to circumstantial evidence only, and therefore cannot use the direct method to establish a retaliation claim.

Under the indirect method, it is undisputed Brown took FMLA-protected medical leave, and was ultimately discharged. Again, though, Brown fails to prove that she was performing her job satisfactorily. She claims Llorens wrongly concluded she was repeatedly tardy to work. Brown fails to understand, though, that the mere existence of a factual dispute will not automatically defeat summary judgment. Rather, the Court must find the factual dispute is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247. Brown has come forward with no *evidence* to

refute Sun-Times' contention that she was repeatedly tardy.

Additionally, Brown is again unable to identify a similarly-situated employee who did not engage in the protected activity and was treated more favorably by Sun-Times. Brown claims Ines Stephenson-Harbour, an African-American woman in her Department who also took time off, did not return to Sun-Times after her medical leave. That proves nothing. Stephenson-Harbour engaged in the protected activity so she does not qualify as a similarly-situated employee. Without some specific evidence, which Brown has not pointed to, that Sun-Times allowed another collector with performance issues who did not take FMLA leave to remain employed, Brown cannot establish a prima facie case of retaliation.

And even if she could, because Sun-Times has articulated a legitimate non-discriminatory reason for its decision, which Brown has not rebutted, Sun-Times is entitled to summary judgment on her FMLA retaliation claim. *See Stone*, 281 F.3d at 644.

## CONCLUSION

Accordingly, Sun-Times' motion for summary judgment is granted.

IT IS SO ORDERED.

WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: December 12, 2002

-13-